Terry F. KIDWELL, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 93–CV–1252.

District of Columbia Court of Appeals.

Argued Nov. 29, 1995.

Decided Jan. 11, 1996.

Mindy G. Farber, Rockville, for appellant.

Martin B. White, Assistant Corporation Counsel, with whom Garland Pinkston, Jr., Acting Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before SCHWELB, FARRELL, and REID, Associate Judges.

FARRELL, Associate Judge:

This appeal concerns two federal claims arising from plaintiff-appellant Terry F. Kidwell's failure to receive a promotion by the District of Columbia Department of Corrections. The first claim, under 42 U.S.C. § 1983 (1988) and *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), asserted that the nonpromotion violated Kidwell's First Amendment rights. The second, brought under Title VII, 42 U.S.C. § 2000e *et seq.* (1988), asserted that the nonpromotion was motivated by impermissible gender discrimination. The trial court granted summary judgment to the District of Columbia as to both. We affirm as to the first, and reverse as to the second.

## I.

Kidwell began his employment with the D.C. Department of Corrections (the Department) in 1983 as a part-time firearms instructor. According to allegations in the complaint, Kidwell's immediate supervisor, Richard Smith, assured him on approximately twelve occasions between 1986 and 1988 that he would receive a full-time position at the academy. During that same two-year period, Kidwell "observed certain problems related to safety violations, record falsification, inefficiency and violation of Department regulations at the training academy," and on several occasions reported them to his "immediate superiors." According to Kidwell, Smith characterized him "as having a 'bad attitude,' and as being a 'disgruntled employee' because he 'complained about things.'" Smith told him to "slow down," and that if he was dissatisfied he should move on.

In October 1988, two full-time instructor positions were available and, "[a]lthough plaintiff [allegedly] was the most qualified person for these positions, they were awarded to two other persons, a man and a woman." After the selection, Smith assertedly told Kidwell he would receive a full-time position some time after October 1989. Another of Kidwell's superiors, William Beck, allegedly told Kidwell and fellow employee Debra Miller: "I probably shouldn't say this to you, but you are both going to get the permanent jobs." Two positions were again advertised in February 1990, and, according to the complaint, "[t]he Department filled one with a female [Miller] of lesser qualifications than those of plaintiff." The Department left the other position unfilled.

On March 20, 1991, Kidwell filed his initial complaint in Superior Court alleging claims for breach of contract (later voluntarily dismissed) and deprivation of rights under 42 U.S.C. § 1983. On May 21, 1992, Smith stated in deposition that his recommendation of Debra Miller for the 1990 position had been based in part on the fact that she was a woman. He explained that "at that time I felt that I needed a woman" since a large number of females were coming through training and in some cases "they work better female-to-female than male-to-[fe]male."[1] Based on this deposition testimony, the trial court granted Kidwell leave to file an amended complaint to add a claim for sex discrimi-

---

1. Smith further stated that "[Miller] has a nice personality, she never complained, she had a positive attitude towards the department and the range training program where Kidwell has a negative attituted [sic] towards the training academy, myself, Mr. Ridley [the then-Director] and everybody else, and the leadership of this department." Smith's supervisor, Erthel Foster, stated in deposition that Miller was chosen because she had a college degree and experience as a school teacher.

nation, which was done on October 13, 1992. On that same date, Kidwell filed a sex discrimination claim with the Equal Employment Opportunity Commission (EEOC). Since litigation over the promotion had already begun, the EEOC issued a right to sue letter two days later. Following unsuccessful efforts by the District to remove the case to the United States District Court for the District of Columbia, the Superior Court granted summary judgment to the District [2] on both claims.

## II.

We sustain the judgment granted the District on the First Amendment claim.[3] Although the trial court granted summary judgment on multiple grounds, it is enough for us to conclude, as a matter of law, that Kidwell failed to demonstrate liability of the District of Columbia under 42 U.S.C. § 1983 for the act of its official, Smith, in allegedly violating Kidwell's First Amendment rights.[4]

■ In *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691, 98 S.Ct. at 2036.[5] *Monell* thus "rejected liability for municipalities and municipal officials under 42 U.S.C. § 1983 based upon

*respondeat superior.*" *Fulwood v. Porter,* 639 A.2d 594, 599 (D.C.1994). At the same time, local governments "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2036. Kidwell asserted such a "custom or policy of retaliation" by the Department for the exercise of employee First Amendment rights, but the assertion need not detain us long.[6]

■ In his response to interrogatories, Kidwell named two other persons who he claimed had earlier been targeted by Department officials for asserting First Amendment rights. As to one, however, he did not describe how the individual had even been the subject of adverse action. The remaining alleged instance, even combined with Smith's claimed retaliation in this case, falls far short of establishing a custom or policy to penalize First Amendment expression. "Although not authorized by written law," unconstitutional practices "could well be so *permanent and well settled* as to constitute a 'custom or usage' [under § 1983] with the force of law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970) (emphasis added). The allegations here simply do not meet this test. *See also Fulwood,* 639 A.2d at 600 (failure of

---

**2.** Previously, the Superior Court had dismissed all of the named defendants except the District; appellant does not challenge that dismissal.

**3.** We reject at the outset Kidwell's reliance on the law of the case doctrine. The trial court's October 18, 1991, denial of the District's motion to dismiss the § 1983 action did not bar a later grant of summary judgment based in part on materials developed in discovery. *See, e.g., Vincent v. Anderson,* 621 A.2d 367, 372–73 (D.C. 1993).

**4.** 42 U.S.C. § 1983, as amended, provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,

or other proper proceeding for redress. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**5.** For purposes of this decision only, we treat the District of Columbia as a municipality within the contemplation of § 1983 despite the District's argument below and on brief that it is not a "person" within the statute under *Ngiraingas v. Sanchez,* 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990). We observe, however, that this court has repeatedly found the District subject to the reach of § 1983. *E.g., District of Columbia v. Evans,* 644 A.2d 1008, 1013 n. 3 (D.C.1994); *Kelly v. Parents United for the D.C. Public Schools,* 641 A.2d 159 (D.C.1994).

**6.** Kidwell conceded in the trial court the difficulty of his showing that a "policy, custom or practice" of penalizing protected expression resulted in the nonpromotion.

police to train and supervise can amount to "policy" of indifference only if there is "a widespread pattern of misconduct by subordinate officers which [a senior official] reasonably may be said to have disregarded"); *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir.1987) ("custom and usage" means practices of such "duration and frequency [as to warrant] ... a finding of either actual or constructive knowledge by the ... governing body [or policymaker] that the practices have been customary among its employees").

■ Kidwell relies, alternatively, on the principle that even a single unlawful act may be attributable to a municipality if it was the act of an officer having final policymaking authority. But to state the principle is to recognize its limitations:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. *See, e.g., Oklahoma City v. Tuttle,* 471 U.S. [808], 822–824 [105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791] [(1985)]. The official must also be responsible for establishing final governmental policy respecting such activity before the municipality can be held liable.

*Pembaur v. Cincinnati,* 475 U.S. 469, 481–83, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986) (plurality opinion). *See also City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion); *Partee v. Metropolitan School Dist. of Washington Township,* 954 F.2d 454, 456 (7th Cir.1992) (citation omitted) ("[A]n isolated decision by a municipal employee or official constitutes official policy only if that official has 'final policymaking authority' for the challenged act under state law."); *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 637 (11th Cir.1991); *Worsham*

*v. City of Pasadena,* 881 F.2d 1336, 1340–41 (5th Cir.1989).

■ Kidwell failed utterly to establish that Smith had "final policymaking authority." [7] Even if Smith had had total discretion to hire and fire employees, his employment decisions are not imputable to the District if he was not responsible for establishing training academy employment policy. *Pembaur, supra.* There was no evidence produced that the Department had delegated its power to establish final employment policy to Smith. Indeed, although Smith had input into the hiring decisions, he was not even the final decisionmaker for the 1988 or 1990 vacancies. The record reveals that Smith's supervisor Wayne Beck made the 1988 selection and Smith's supervisor Erthel Foster made the 1990 selection; no interrogatory answers or other materials were offered tending to show that they shared Smith's alleged retaliatory motive. As Smith did not make the final hiring decisions, still less can he be said to have had final authority for hiring policy in the Department. Kidwell's § 1983 claim against the District fails on this ground alone.

### III.

Kidwell's claim under Title VII fares better. As the District concedes, issues of imputed liability play no role under that statute. *See* 42 U.S.C. § 2000e(b) ("The term 'employer' means a person ... [of a specific kind] and any agent of such a person"). Kidwell's claim of sexual discrimination relies primarily on the admissions by Smith in his deposition, taken in connection with the § 1983 complaint, that Debra Miller was recommended for the 1990 position partly because she was a woman, and that Smith felt he needed to hire a female instructor because of the large number of female trainees. Kidwell, however, did not file his Title VII complaint with the EEOC within 300 days of Miller's selection, the alleged unlawful act, as required by 42 U.S.C. § 2000e–5(e). He argued nevertheless that the limitations period

---

**7.** "[T]he identification of those officials whose decisions represent the official policy of the local government unit is ... a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989) (emphasis in original).

was tolled on equitable principles until he learned of Smith's admissions, after which he timely filed his complaint.[8] The trial court rejected this argument and entered summary judgment on the Title VII claim as well. Kidwell concedes that application of "equitable tolling" to the statute is a question of law, and argues that the court erred in failing to apply the doctrine in his favor on the facts presented. We agree.

■ Kidwell's complaint with the EEOC had to be filed within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). But, as the Supreme Court has held, the limitations period is not jurisdictional and "is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (footnote omitted). Equitable tolling, in this context, means that "[u]nder Title VII, if an employee did not know or have reason to know that an employment decision was discriminatory in nature, the time limits for filing an administrative complaint may be tolled." *Stoller v. Marsh,* 221 U.S.App.D.C. 22, 25, 682 F.2d 971, 974 (1982). Similarly stated, the EEOC deadline is tolled "until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 931 (5th Cir.1975).[9]

■ Applying this standard, we hold that while Kidwell knew from the 1990 date on which the instructor position was filled that a woman had been selected, only Smith's later admissions placed him on reasonable notice of facts supporting a claim of sex discrimination. The District argues that, on Kidwell's own representations in the complaint, "of the

three full-time firearms instructors hired during the time period relevant to this case, one was a black male and two were black women,[10] suggesting that considerations of diversity, including sex, were playing at least some role." But assuming also that Kidwell believed he was more qualified than these candidates, this still was not a basis on which a reasonably prudent person would have complained to the EEOC of sex discrimination. First, there was no overall gender disparity in the makeup of the instructional staff of which Kidwell assertedly should have been aware. Second, the recent history of hirings—a man and a woman in 1988—evinced no selection pattern favoring women. Third, Kidwell concededly had been a thorn in the side of Smith by repeatedly complaining of training deficiencies and security lapses; thus, from Kidwell's reasonable (even if mistaken) perspective, an unlawful motive for denying him the selection lay much closer at hand than gender discrimination—witness his § 1983 complaint alleging reprisal for constitutionally protected speech. Fourth, strengthening this perception was the fact that the second 1990 vacancy was not filled with a woman or, indeed, anyone else, but was left open despite the insider advantage Kidwell and Miller presumably both had in the competition. Did the "discrimination" lie in filling job A with a woman or in not filling job B at all? The suggestion, as to the latter, that the Department was waiting for a better qualified woman to come along would have seemed far-fetched.

All told, then, the simple fact that Kidwell was rejected in favor of a woman he believed less qualified than himself (*and* in favor of leaving the second spot vacant) was not sufficient to put him reasonably on notice of facts supporting a gender discrimination claim. Giving a plaintiff the benefit of all reasonable

8. The District does not argue that Kidwell delayed unreasonably in filing his complaint once he learned of Smith's admissions. *See Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 453 (7th Cir.1990) ("plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information").

9. *Reeb* has been described as "the seminal case" enunciating the test for equitable tolling in this context. *Vaught v. R.R. Donnelley & Sons Co.,* 745 F.2d 407, 410 (7th Cir.1984).

10. This is not entirely correct. While the original complaint stated that the 1988 vacancies were filled by "a man and a woman of African-American descent," the First Amended Complaint noted that they were filled by "an Afro-American man and a caucasian woman."

doubt on this issue is consistent with the remedial purpose of Title VII. *See Zipes,* 455 U.S. at 398, 102 S.Ct. at 1135 ("tolling when equity so requires" serves to "honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer"). Practical considerations favor doing so as well. On the one hand, as Judge Posner has observed,

> The statute of limitations is short … in most employment [discrimination] cases because delay in the bringing of suit runs up the employer's potential liability; every day is one more day of backpay entitlements. We should not trivialize the statute of limitations by promiscuous application of tolling doctrines.

*Cada, supra* note 8, 920 F.2d at 453. But, at the same time, construing close cases against the employee would inevitably create an incentive for precipitous, ill-considered filings with an administrative agency already burdened with complaints, no doubt including a goodly number of that variety. In this regard, the fact that "[t]here is no duty of precomplaint inquiry in EEOC proceedings as distinct from federal court actions (Fed. R.Civ.P. 11)," *id.* at 452, cuts both ways.

We therefore hold that the statute of limitations on Kidwell's gender discrimination claim was tolled until he learned of Smith's admissions in deposition[11] and for the time thereafter until his EEOC complaint was filed, which the District concedes was reasonable. Kidwell's cause of action under Title VII must be reinstated.

*Affirmed in part and reversed in part; remanded for further proceedings.*

---

**11.** We express no opinion at all on whether those admissions in fact were evidence of unlawful discrimination.