RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

OVERDRIVE INC.,

> *Plaintiff-Appellant*,

*v.*

OPEN E-BOOK FORUM dba International Digital Publishing Forum,

> *Defendant-Appellee*.

┐
│
│
│ No. 20-3432
│
│
┘

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:17-cv-00165—Solomon Oliver, Jr., District Judge.

Argued: January 27, 2021

Decided and Filed: February 5, 2021

Before: BOGGS, SUTTON, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Andrew G. Fiorella, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellant. David T. Movius, MCDONALD HOPKINS LLC. Cleveland, Ohio, for Appellee. **ON BRIEF:** Andrew G. Fiorella, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellant. David T. Movius, MCDONALD HOPKINS LLC. Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

SUTTON, Circuit Judge. When International Digital Publishing Forum decided to license and potentially transfer its intellectual property to the World Wide Web Consortium, one of its members sued. OverDrive claimed that the arrangement violated its rights under the

Copyright Act. The district court granted summary judgment to International Digital because it validly licensed its intellectual property and because it would be premature to resolve any claim about future transfers. We affirm.

A digital reading platform, OverDrive is a member of International Digital Publishing Forum, a nonprofit trade association dedicated to the development of electronic publishing standards. At one point, International Digital's members worked together to develop EPUB, the leading eBook format.

International Digital has an intellectual-property policy. Approved by OverDrive and its other members, the policy says that International Digital's members retain any copyrights in their separate and independent contributions to EPUB. But it also grants International Digital a license to "reproduce, adapt, distribute, perform, display, and create derivative works" of any copyrighted contributions to EPUB. R.16-2 at 11. And it allows International Digital to sublicense others to do the same.

In 2016, by a vote of 88% to 12%, International Digital voted to transfer its assets to the World Wide Web Consortium, an international organization committed to developing Web standards. International Digital and the Consortium entered into an asset-transfer agreement the next year. The agreement granted the Consortium a "license to use" International Digital's intellectual property to "carry out the digital publishing activities" of International Digital. R.37-12 at 5. And it provided that International Digital would commence dissolution within nine months, after which its intellectual property rights, including any in EPUB, would be owned by the Consortium.

The Consortium began developing improvements to EPUB, with an eye to creating an updated version. Nine months later, International Digital and the Consortium reached a second agreement, "further document[ing] and affirm[ing] aspects of the license" that International Digital had given the Consortium in the first agreement. R.37-13 at 2. The second agreement stated that the Consortium's license to "use" International Digital's intellectual property encompassed a broad license to "reproduce, adapt, distribute, perform, display and create derivative works." *Id.* at 2–3. And it explained that the license included International Digital's

sublicensable rights to any copyrights its members retained. The agreement also delayed International Digital's dissolution until it transfers its intellectual property to the Consortium.

OverDrive sued, seeking a declaratory judgment that International Digital had violated, and would violate in the future, its copyrights in EPUB. OverDrive claimed that International Digital infringed its EPUB copyrights by giving the Consortium access to EPUB. And it claimed that International Digital would infringe OverDrive's copyrights once International Digital transferred its intellectual property to the Consortium. OverDrive sought various forms of relief, including damages, a declaratory judgment, and an injunction.

After discovery ended, International Digital moved for summary judgment. The district court granted the motion for two reasons: (1) International Digital's license defeated the infringement claim; and (2) the claim for future infringement was unripe because International Digital had not yet transferred its intellectual property to the Consortium and the contours of any future transfer remained contingent and speculative. OverDrive challenges both rulings on appeal.

*Past and Current Infringement*. The Copyright Act says that a copyright owner has the exclusive right to "reproduce," "distribute," or "prepare derivative works based upon" its protected work. 17 U.S.C. § 106. The owner also can "authorize" others to do the same. *Id.* That means a licensee "authorized by the copyright owner to use the copyrighted work" does not infringe the copyright "with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).

So it happened here when OverDrive granted International Digital the right to use any copyrights OverDrive had in EPUB. By giving International Digital a license to "reproduce, adapt, distribute, perform, display and create derivative works" of its EPUB copyrights (to the extent it had them), OverDrive permitted International Digital to use the copyrighted work in these ways. R.16-2 at 11. Not only that, it also gave International Digital an unrestricted right to grant sublicenses with respect to those same copyrights. International Digital, in turn, permissibly sublicensed EPUB by granting the Consortium a "license to use" International Digital's intellectual property. R.37-12 at 5. That gave the Consortium a sublicense to use any

of OverDrive's copyrights in EPUB. International Digital did not infringe OverDrive's copyrights by doing with them what it was authorized to do. *See Sony*, 464 U.S. at 433. No infringement occurred.

In response, OverDrive acknowledges what the Copyright Act says, that International Digital has the right to sublicense OverDrive's copyrights in EPUB. But it maintains that International Digital did not permissibly invoke this authority through the initial agreement and did not create a valid sublicense that permitted the Consortium to develop a new version of EPUB, a "derivative work." Not true. The agreement granted the Consortium a "license to use" *all* of International Digital's intellectual property. R.37-12 at 5. That intellectual property included a license to "create derivative works" (among other things) of any of OverDrive's copyrights in EPUB. R.16-2 at 11.

*Future Infringement*. Even if International Digital did not violate the Copyright Act in the past through the initial agreement, OverDrive claims that the second agreement—which could transfer the assets of International Digital to the Consortium—will violate the Act in the future. The hiccup in this argument does not turn on the meaning of the Act; it turns on the meaning of Article III of the United States Constitution.

Whether it is the legislative, executive, or judicial branch, the United States Constitution delegates each of them limited powers, often only those enumerated. The federal "judicial Power" does not extend to any dispute that might arise between any two people in the United States. U.S. Const. art. III, § 2. It extends only to "Cases" and "Controversies." *Id.* Not all claims are "appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quotation omitted). A cognizable case or controversy requires a plaintiff with a true injury, a defendant who could remedy the problem, and a live dispute. As to this last imperative, a claim is not "amenable to . . . the judicial process," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998), "when it is filed too early (making it unripe)" or "filed too late (making it moot)," *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc).

Ripeness, the matter at hand, asks two questions. One: Does the claim "arise[] in a concrete factual context and concern[] a dispute that is likely to come to pass?" *Id.* A claim is not ripe if it turns on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Two: What is "the hardship to the parties of withholding court consideration"? *Warshak*, 532 F.3d at 525 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "No" and "none" are the answers to these questions. Because even one negative answer creates a ripeness problem, this claim was properly dismissed.

The alert reader might wonder if the second inquiry amounts to an independent requirement for establishing Article III ripeness. Is it really true that a federal court could refuse to resolve a claim presented in a current and "concrete factual context" on the ground that the parties would not be hurt by a delayed resolution of their claim? That seems doubtful. *See Driehaus*, 573 U.S. at 167; *Kiser v. Reitz*, 765 F.3d 601, 606–07 (6th Cir. 2014). But the point makes no difference here, as OverDrive fails both inquiries. For now, the Supreme Court continues to look at both questions, whether in *Abbott*, 387 U.S. at 149, *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998), or most recently in *Trump*, 141 S. Ct. at 536. Perhaps over time the second inquiry will merge into the first, merely offering a way of establishing concreteness, or its absence, in a given dispute.

With that side note accounted for, we can turn to the first inquiry: Is there a "concrete factual context" concerning a dispute that is "likely to come to pass"? *Warshak*, 532 F.3d at 525. Or does it turn on "contingent future events that may not occur as anticipated, or indeed may not occur at all"? *Trump*, 141 S. Ct. at 535. OverDrive claims that, once International Digital dissolves, the Consortium will lose its sublicense to OverDrive's copyrights, and its work on updating EPUB will then constitute copyright infringement. But that may or may not happen. Recall International Digital's most recent agreement with the Consortium. In it, International Digital agreed to begin the dissolution process only if and only when it transfers its intellectual property to the Consortium. *If* and *when* do not a ripe controversy make. Even assuming International Digital does dissolve, we do not know how that will play out. It has already changed its agreement with the Consortium once and may well do so again, "riddl[ing]" the

claim with the kinds of "contingencies and speculation" that obstruct federal "judicial review." *Id.* Granting OverDrive relief at this juncture would require hypothetical rulings about hypothetical facts, just the kind of advice Article III bars us from offering. *See Aetna Life Ins. v. Haworth*, 300 U.S. 227, 241 (1937).

OverDrive does not fare any better under the second inquiry: Will declining to resolve the question of future infringement create undue hardship for OverDrive? The reality that International Digital is not currently infringing OverDrive's copyrights allows us to answer this question with a question of our own: How could OverDrive be prejudiced if no current infringement exists and if it merely must wait until any new act of (alleged) infringement occurs when (and if) International Digital transfers its intellectual property to the Consortium? Any theory of prejudice is just as unripe as everything else in this claim.

One loose part of this conversation dangles. OverDrive separately argues that the district court erred by failing to decide whether International Digital has an independent copyright interest in EPUB as its "collective-work author." In its view, we need to decide whether International Digital has a copyright in EPUB before we can know whether transferring its intellectual property to the Consortium would infringe OverDrive's copyrights. But settling that issue will not get us any closer to a ripe dispute. We do not need to know the precise scope of International Digital's intellectual property to determine that evaluating its transfer today would be premature.

We affirm.