*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-0746

OVERDRIVE, INC., APPELLANT,

V.

THE OPEN EBOOK FORUM, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2016-CA-007768-B)

(Hon. José M. López, Trial Judge)

(Argued March 29, 2022                    Decided January 26, 2023)

*Andrew G. Fiorella*, with whom *Erin L. Hamilton* and *Martin J. Amundson* were on the brief, for appellant.

*David G. Ross*, with whom *Benjamin Takis* was on the brief, for appellee.

Before MCLEESE and DEAHL, *Associate Judges*, and GLICKMAN,[*] *Senior Judge*.

DEAHL, *Associate Judge*:  The Open eBook Forum, doing business as

International Digital Publishing Forum (IDPF), is a nonprofit corporation focused

---

[*] Judge Glickman was an Associate Judge of the court at the time of argument. He began his service as a Senior Judge on December 21, 2022.

on advancing electronic books and digital publishing. IDPF is the developer of EPUB, a popular file format for e-books. About a decade ago, IDPF's board of directors—faced with precarious finances, declining membership, and competitive threats—determined the organization's long-term viability was in jeopardy. After considering a variety of options, the board negotiated a merger with the World Wide Web Consortium (W3C), a much larger organization with the broader purpose of establishing standards for the World Wide Web to ensure its long-term growth.

OverDrive, Inc., a member of IDPF, opposed the merger and lobbied against it. When IDPF's board nonetheless approved the merger and put it to a membership vote, OverDrive petitioned the Superior Court to preclude that vote and—when that failed and IDPF's membership approved the merger—to block the merger until a new vote could be held. OverDrive brought its petition under D.C. Code § 29-401.22(a), which permits members of nonprofit corporations to challenge corporate actions in certain circumstances. But the court's review authority under that provision does not extend to instances where the "nonprofit corporation has provided in its articles of incorporation or bylaws for a means of resolving a challenge to a corporate action." *Id.* § 29-401.22(c). The Superior Court found that to be the case here, as IDPF's bylaws permitted any group of fourteen members—equal to the number of directors on the board—to petition the board for a rescission vote, which

would trigger a new vote of the full membership. Because IDPF's bylaws provided a mechanism for OverDrive to raise an internal challenge to the merger, the trial court concluded that its own review under § 29-401.22(a) was limited to ensuring that the merger complied with IDPF's articles and bylaws. It did, in the court's view.

In this appeal, OverDrive argues that (1) this court already rejected the trial court's reasoning when, in a prior appeal, we concluded that § 29-401.22(c) is not a jurisdiction-stripping statute; (2) the provision in IDPF's bylaws permitting a challenge to a corporate action is too ineffectual to strip the Superior Court of its authority to entertain OverDrive's challenge under § 29-401.22(a); (3) even if the trial court's statutory authority was limited to reviewing only the merger's compliance with IDPF's bylaws and articles, as the trial court reasoned, this merger was non-compliant because those documents required that any transfer of IDPF assets be to organizations that "engage in activities substantially similar to those of" IDPF, and W3C does not meet that description; and (4) putting § 29-401.22(a) aside, the trial court also had freestanding equitable authority to block the merger and it should have done so for a host of reasons. We disagree as to each point and affirm.

**I.**

IDPF is a nonprofit corporation, formed in the District of Columbia, dedicated to developing and promoting digital publishing. Its members include other nonprofit organizations, educational institutions, publishers, and technology companies. IDPF was formerly known as the Open eBook Forum, and its original articles of incorporation (adopted in 2000) stated that its purposes were to "create and maintain standards and promote the successful adoption of electronic books; to provide a forum for the discussion of issues and technologies related to electronic books; [and to] develop, publish, and maintain common specifications relating to electronic books." About five years after it was incorporated, IDPF modestly expanded that mission statement to focus on digital publishing more generally, rather than just e-books. IDPF's most important contribution to digital publishing is the EPUB file format, the "most widely supported non-proprietary" e-book standard in the world. EPUB "allows publishers to produce and send a single digital publication file" providing "consumers interoperability between software/hardware" platforms for digital books and other publications.

OverDrive is a leading platform for e-books, audiobooks, and other digital media. It was among IDPF's members, of which there were about 130 in good

standing at the time of the relevant membership vote discussed below. OverDrive's founder and CEO is Steven Potash, who also helped found IDPF and served as one of its board members during its first decade of existence.

Bill McCoy became IDPF's executive director in 2011. McCoy grew concerned about IDPF's finances and declining membership over the years, and during his tenure he and the board considered strategies to ensure IDPF's long-term viability. By the spring of 2016, he and other directors believed the best option available was to merge with W3C, a joint collaborative project between the Massachusetts Institute of Technology and three other educational institutions. W3C and its member organizations "work together to develop Web standards" and seek "to lead the World Wide Web to its full potential." While W3C was not focused exclusively on e-books or digital publishing, it had a digital publishing interest group and collaborated with IDPF to adopt and implement digital publishing standards. IDPF's board was concerned that if it did not merge with W3C it risked getting pushed out of the digital publishing space altogether by larger and better-resourced competitors (including W3C itself). In April 2016, IDPF's board notified its membership of the proposed merger and solicited input. The following month, IDPF issued a public notice of the proposed merger and held a meeting in Chicago, open to both members and the public, where the proposed merger was discussed.

The merger negotiations between IDPF and W3C continued throughout the spring and summer of 2016.  By late September 2016, the organizations agreed to a memorandum of understanding under which the merger would take place in two key steps: (1) W3C would acquire IDPF's members under a so-called "membership exchange," *see* D.C. Code § 29-409.03, and (2) W3C would acquire IDPF's assets, including EPUB, in an asset transfer, *see id.* § 29-410.02.  W3C also agreed to hire McCoy as an independent contractor as part of the deal, with a base compensation of $125,000 per year plus an annual bonus capped at $90,000 per year (McCoy's IDPF salary was $165,000).  After the membership exchange and asset transfer were completed, IDPF would dissolve.  The board then sent its membership a notice of intent to approve the merger, which included a draft plan for the merger and disclosed that W3C would hire McCoy as part of the deal, in September 2016.  The notice explained that if the board approved the merger as anticipated, it would then go to a vote of the full membership.

OverDrive opposed the merger and tried to thwart it.  Its position was that the proposed merger was a "self-serving, poorly conceived, and improperly executed" deal which would lead to IDPF's "self-immolation" and "destroy" the organization. About a week after the board sent the draft plan out to IDPF's members, an attorney for OverDrive sent a six-page letter to McCoy posing questions about the

transaction, requesting documents from the board, and threatening litigation. OverDrive's view was that IDPF was giving away EPUB to W3C and receiving nothing in return, and it was also violating IDPF's articles of incorporation, which provided that IDPF could transfer its assets only to entities "engaged in activities substantially similar" to IDPF's, a criterion it asserted that W3C did not meet. Two days later, Potash (OverDrive's CEO) asked to present the board with an alternative business plan to grow membership, solicit funding, and collaborate with other digital publishing standards organizations. The board granted Potash's request and heard his presentation later that week, but nonetheless approved the merger with W3C and put the matter to a vote of its full membership. The three-week voting period for the members in good standing lasted from October 14 to November 4, 2016.

Potash contacted IDPF's President, George Kerscher, and requested the email addresses for all primary representatives of IDPF's member organizations, i.e., the individuals with authority to vote on behalf of those organizations. Kerscher agreed to provide a list of IDPF's member organizations and their general mailing addresses, but indicated that he was under no obligation to provide the primary representatives' names or email addresses to Potash. Kerscher nonetheless offered to provide that information if Potash agreed to forgo any litigation regarding the proposed merger, so that the merger would be "in the hands of all of IDPF's

members to decide on the merits." Potash rejected that offer and did not receive the email addresses of the primary representatives.

Aside from contacting Kerscher, Potash made little effort to identify IDPF's primary representatives on his own. OverDrive also did not make any push to rescind the board's approval of the merger; IDPF's bylaws permitted any group of members equal in number to the board of directors (fourteen) to call for a rescission vote, with a simple majority of a quorum then needed to rescind the board's action. Instead, OverDrive filed suit in D.C. Superior Court, invoking the court's authority under D.C. Code § 29-401.22 to enjoin the membership vote because the board's approval of the merger was "an improper nonprofit corporate action." The court declined to enjoin the vote, which proceeded as planned.

Of IDPF's roughly 130 member organizations in good standing, 81 cast votes for or against the merger, with 71 in favor and 10 (including OverDrive) against. That was substantially more than enough for the "simple majority of a quorum" necessary to approve the merger. Within months of the membership's approval, IDPF and W3C had executed a "Membership Exchange and Asset Transfer Agreement," but the two organizations agreed to extend the deadline for IDPF's

dissolution and to clarify the terms of an interim intellectual property license concerning W3C's use and development of EPUB.

Meanwhile, OverDrive's suit continued in Superior Court. The court initially concluded that it lacked subject matter jurisdiction over the suit. While the court recognized that § 29-401.22(a) generally permits members of nonprofits to challenge corporate actions in court, § 29-401.22(c) removes that authorization in cases where the "nonprofit organization has provided in its articles of incorporation or bylaws for a means of resolving a challenge to a corporate action." That was the case here, in the court's view, because IDPF's bylaws provided an avenue for any of its members, including Overdrive, to challenge the board's action by seeking a rescission vote. The court concluded that it therefore lacked jurisdiction to entertain the suit. OverDrive appealed that ruling, and we reversed and remanded for further proceedings, holding that § 29-401.22(c) is not of jurisdictional import. *OverDrive Inc. v. Open eBook Forum*, No. 17-CV-101, Order at 3 (D.C. Feb. 23, 2018). On remand, OverDrive filed an amended petition seeking a permanent injunction to block the transfer of EPUB to W3C and to prevent IDPF and W3C from completing the merger.

After extensive discovery, the trial court granted summary judgment for IDPF, finding that: (1) D.C. Code § 29-401.22(c) curtailed the court's "statutory power to overrule IDPF's Board and members," allowing it only to "enforce[], as appropriate," IDPF's articles and bylaws; and (2) the transaction did not violate IDPF's articles or bylaws because, contrary to OverDrive's arguments, W3C "engage[d] in activities substantially similar to those of" IDPF. OverDrive now appeals.[1]

## II.

The threshold dispute between the parties centers on the extent to which the trial court had authority to entertain IDPF's claims. In the trial court's view, its authority to "hear and determine the validity of [a] corporate action" under § 29-

---

[1] In addition to its suit in Superior Court, OverDrive also filed a federal copyright infringement case against IDPF that is tangentially relevant to this appeal. In sum, OverDrive asserted that it retained copyrights in its "separate and independent contributions to EPUB," which it had never agreed to transfer to W3C. *OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 956 (6th Cir. 2021). The federal district court did not cast doubt on the premise of the claim that a transfer of EPUB to W3C would violate OverDrive's copyright, but it nonetheless granted summary judgment for IDPF because: (1) at the time of the suit, IDPF had not yet dissolved and had only licensed W3C to use and develop EPUB, rather than transferring it; and (2) any future infringement claim based on an actual transfer of EPUB from IDPF to W3C was not ripe for review. The Sixth Circuit agreed as to both points and affirmed. *Id.* at 959.

401.22(a) was severely circumscribed by § 29-401.22(c), because IDPF "provided in its . . . bylaws for a means of resolving a challenge to a corporate action," namely, by permitting members to call for a rescission vote. That internal dispute resolution mechanism meant, in the trial court's view, that it was permitted only to "enforce the articles or bylaws if appropriate," D.C. Code § 29-401.22(c), and it concluded that the merger was compatible with IDPF's articles and bylaws. Beyond that narrow authorization, the court reasoned that it had no authority to invalidate the membership's vote to approve the merger simply because that vote was "unfair" or contrary to IDPF's interests in the variety of ways that OverDrive contends.

OverDrive raises several challenges to that reasoning, which fit roughly into four categories: (1) that this court, in the prior appeal from these proceedings, already rejected the trial court's reading of § 29-401.22(c); (2) in any event, IDPF's bylaws did not in fact provide a means of resolving a challenge to a corporate action within the meaning of § 29-401.22(c), so that limitation on the court's authority does not apply; (3) even if the trial court was correct that it could review the merger only for compliance with IDPF's articles and bylaws, the merger violated the articles' requirement that IDPF's assets transfer upon dissolution only "to one or more organizations which engage in activities substantially similar to those of" IDPF; and (4) putting § 29-401.22 aside, the trial court was permitted to exercise its equitable

authority to invalidate the merger and had jurisdiction to do so per the general grant of jurisdiction in D.C. Code § 11-921.  We consider these arguments in turn.

## A.

OverDrive argues that we have already rejected the trial court's conclusion that it lacked statutory authority to hear this dispute under D.C. Code § 29-401.22. We disagree.  In the trial court's 2017 order, unlike the one now on appeal, the trial court ruled that § 29-401.22(c) deprived it of jurisdiction to hear this dispute.  We reversed that ruling in a three-page order explaining that § 29-401.22 "should not be read as a jurisdiction-stripping statute."  Order of Feb. 23, 2018, *supra*, at 2.  At the same time, we acknowledged that § 29-401.22(c) "circumscribes [the] cause of action" authorized by § 29-401.22(a), but explained that it is wrong to conflate a statutory narrowing of a cause of action with stripping jurisdiction.  *Id.* at 2-3.  That erroneous conflation was the narrow basis for our reversal of that 2017 order.

It is now OverDrive that mistakenly conflates the two concepts.  It misreads our prior ruling that § 29-401.22(c) is not a jurisdiction-stripping statute as foreclosing the trial court's subsequent ruling that § 29-401.22(c) curtails the cause of action codified in § 29-401.22(a).  OverDrive asserts that the two concepts— stripping jurisdiction and narrowing statutory authority to hear a case—"are

indistinguishable." Not so. Our precedents draw a clear distinction between them, emphasizing that "statutory restrictions governing the cases courts may hear are not to be deemed jurisdictional unless" that is the clear "intent of the legislature." *Neill v. D.C. Pub. Emp. Rels. Bd.*, 93 A.3d 229, 238 n.37 (D.C. 2014) (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)). This is because, contrary to OverDrive's assertions, there are significant practical consequences to attaching jurisdictional import to such restrictions. For instance, courts are obliged to satisfy themselves that they have jurisdiction, even if no party has cast any doubt on the matter and even if the parties affirmatively agree that the court has jurisdiction. *See Rolinski v. Lewis*, 828 A.2d 739, 742 (D.C. 2003). Conversely, non-jurisdictional limitations on courts are generally "subject to waiver, estoppel," and other exceptions. *Kidwell v. District of Columbia*, 670 A.2d 349, 353 (D.C. 1996) (citation omitted).

In short, "[c]haracterizing a rule as jurisdictional renders it unique in our adversarial system," with distinct practical effects. *Auburn*, 568 U.S. at 153. Both this court and the Supreme Court have therefore, in recent years, "attempted to 'bring some discipline to the use' of the term 'jurisdiction.'" *Gatewood v. D.C. Water & Sewer Auth.*, 82 A.3d 41, 47-48 (D.C. 2013) (quoting *Auburn*, 568 U.S. at 153). Our ruling in the previous appeal did no more than police that important line between

jurisdiction-stripping statutes and more routine statutory limitations on causes of action, such as statutes of limitations and other waivable restrictions like the one in § 29-401.22(c). Our prior ruling thus did not foreclose the trial court's conclusion that § 29-401.22(c) substantially restricted its authority to adjudicate the present dispute.

**B.**

We next consider OverDrive's argument that § 29-401.22(c) should not apply on the particular facts of this case. Recall that § 29-401.22(a) permits members of nonprofit corporations to petition the Superior Court to "hear and determine the validity of [a] corporate action." Section 29-401.22(c) then instructs that this grant of authority "shall not apply if a nonprofit corporation has provided in its articles of incorporation or bylaws for a means of resolving a challenge to a corporate action, but the Superior Court may enforce the articles or bylaws if appropriate." The trial court ruled that IDPF's bylaws provided a means of resolving a challenge to a corporate action by way of a rescission vote. As a result, the court lacked authority to hear OverDrive's claims under § 29-401.22(a), except to the limited extent OverDrive claimed the merger did not comply with IDPF's articles or bylaws.

OverDrive counters that IDPF's bylaws did not in fact provide a means of resolving a challenge to a corporate action within the meaning of § 29-401.22(c). Its arguments come in two types. First, it argues that the bylaws by their very terms provide too ineffectual a mechanism for challenging a corporate action to displace the court's authority to hear such a challenge under § 29-401.22(a). Second, it argues that IDPF's conduct in obstructing OverDrive from effectively challenging the merger should render § 29-401.22(c) inapplicable here.

**i.**

OverDrive argues that the bylaws by their terms provide too ineffectual a "means of resolving a challenge to a corporate action" to trigger § 29-401.22(c)'s limitation on the court's authority under § 29-401.22(a). We do not doubt, nor does IDPF dispute, the premise of OverDrive's argument: that an internal mechanism for challenging corporate actions may be so illusory that § 29-401.22(c)'s limitation on court review does not apply. But we are unpersuaded that this is the case here.

First, OverDrive points out that the bylaws' rescission provision permits only rescission of "action[s] by the Board of Directors," whereas D.C. Code § 29-401.22 enables challenges to all manner of corporate actions, including those by a board, officer, employee, or the entire membership. That distinction is immaterial,

however, where OverDrive's suit is very much challenging the board's actions. OverDrive's amended petition, for instance, challenges the board's actions approving the transaction documents and sending them to a membership vote on October 13, 2016. The board also had to execute the "Membership Exchange and Asset Transfer Agreement" after the membership approved the merger but before any merger could commence. The bylaws thus gave OverDrive direct routes to challenging the merger that it sought to block through its petition, so its complaint that it could not challenge other types of actions is of no moment.

Second, OverDrive complains that the rescission provision allows challenges only by those members who are well-connected enough to succeed through the rescission process, whereas § 29-401.22(a) permits any single member to challenge corporate actions. That is also of no import. Section 29-401.22(c)'s strictures apply when a nonprofit corporation provides "a means of resolving a challenge to a corporate action"; while we agree with OverDrive that these means cannot be illusory, nothing in the statutory text (or any other authority that OverDrive can point to) requires that the internal mechanism for a challenge be as sweeping and permissive as the challenges otherwise permitted by § 29-401.22(a). That accords with the principle that "courts ordinarily will not interfere with the management and internal affairs of a voluntary association." *Blodgett v. Univ. Club*, 930 A.2d 210,

225 (D.C. 2007) (quoting *Levant v. Whitley*, 755 A.2d 1036, 1043 (D.C. 2000)). While that principle may bend where "an organization fail[s] to follow its own rules," *Levant*, 755 A.2d at 1044, OverDrive has not demonstrated that IDPF violated its own rules (a point discussed below in Part II.C).

**ii.**

OverDrive next argues that IDPF "actively and intentionally prevented OverDrive from contacting other members," a "calculated refusal" which "deprive[d]" OverDrive of its ability to use the rescission process ahead of the membership vote. IDPF should therefore not be able to invoke § 29-401.22(c)'s restrictions on the court's authority, or so OverDrive's argument goes. We again do not doubt the premise that a corporation cannot affirmatively obstruct its members from raising a challenge permitted by its articles or bylaws, and where it does so, § 29-401.22(c)'s restriction on the court's authority may not apply. After all, § 29-401.22(c) itself provides that "the Superior Court may enforce the articles or bylaws if appropriate," and a corporation obstructing its members from exercising their rights under the articles' or bylaws' provisions would be grounds for enforcing them. OverDrive's argument is nonetheless unpersuasive because there is simply no factual basis for concluding that IDPF engaged in such obstruction.

The substance of OverDrive's complaints is not really about obstruction at all, but about a lack of facilitation that IDPF was under no obligation to provide. OverDrive complains that IDPF did not, when requested, disclose the identities and email addresses of the representatives of its member organizations. That complaint rings hollow for two reasons. First, OverDrive offers no authority for the proposition that it was entitled—under IDPF's articles, bylaws, or any other authority—to the identities and email addresses of IDPF's primary representatives. Second, OverDrive made virtually no independent effort to obtain those identities and contact information, and the record provides no support for its contention that this would have been a futile task for it to undertake on its own. Potash testified that he and an OverDrive employee tried to locate the information only by using Google "on and off" for a period of time, possibly "less than an hour," before giving up on the endeavor. They did not, for instance, contact the general counsel's offices of IDPF's members (of whom they had a complete roster) and request the contact information of the primary representatives to IDPF.[2]

---

[2] Also recall that Potash was a founding member of IDPF and had served on its board for a decade, departing several years before the events underlying this appeal. One would think that Potash would have personal knowledge of some number of IDPF's primary representatives, or contacts beyond Kerscher who might shed light on the matter, though the record is not clear on that.

In short, we agree with the trial court's assessment that IDPF did not impermissibly obstruct a rescission vote. Instead, OverDrive did not "even attempt[] to avail itself of th[at] remedy provided for in IDPF's Bylaws." We see no basis for circumventing § 29-401.22(c)'s limitations under these circumstances.

## C.

OverDrive next contends that even if the trial court's authority under § 29-401.22 was limited to ensuring the merger's compliance with IDPF's articles and bylaws, the merger did not comply with IDPF's articles. It highlights a provision in IDPF's articles that requires, upon its dissolution, that IDPF's assets (like EPUB) be "transferred to one or more organizations which engage in activities substantially similar to those of" IDPF. The trial court concluded that W3C is engaged in activities substantially similar to IDPF because it (1) formed a digital publishing interest group in 2013, (2) has collaborated with IDPF to adopt and implement certain digital publishing standards, and (3) has worked to ensure the digital publishing industry's input in creating open web standards. While the court acknowledged that W3C engages in many activities beyond digital publishing, it did "not see any provision in the Articles that suggests IDPF may not merge with a larger corporation that engages in numerous activities as long as at least one of those

activities is substantially similar to those of IDPF." OverDrive counters that W3C's mission is so expansive that it cannot meaningfully be said to engage in activities substantially similar to IDPF's discrete focus on e-books and digital publishing.

We note at the outset that it is not clear that § 29-401.22(c) gives a court carte blanche to enforce a nonprofit corporation's bylaws and articles, as the trial court seemed to reason. That provision—which generally divests a court of authority to entertain a challenge to a corporate action where a nonprofit corporation has an internal mechanism for resolving it—permits a court to nonetheless "enforce the articles or bylaws if appropriate." D.C. Code § 29-401.22(c). One might read that provision as permitting a court to enforce only those articles and bylaws that themselves create the internal mechanism for challenging a corporate action, i.e., that it is only appropriate to enforce the corporation's own internal dispute resolution mechanisms. Under this understanding of § 29-401.22(c), it was not for the court to determine whether W3C engaged in activities substantially similar to IDPF—the "substantially similar" clause is not a component of IDPF's internal dispute resolution mechanism—and that question would be better left to IDPF and its membership. With that said, IDPF does not dispute the trial court's broader reading that § 29-401.22(c) permitted it to enforce any of IDPF's bylaws or articles—

notwithstanding that IDPF provides an internal means to challenge corporate actions—so we take that point as conceded in this appeal.[3]

On the merits, we agree with the trial court that the record establishes that W3C engages in activities substantially similar to IDPF. There is no dispute that among W3C's many endeavors are its efforts to develop and implement open digital publishing standards, which aligns with IDPF's core mission of being "the trade and standards association for the digital publishing industry." OverDrive's only bone of contention is that W3C does much more than that, and that W3C's sheer size and expansive mission preclude it from being "'substantially similar' to IDPF." But that misstates the articles' requirement, which is not that IDPF transfer its assets to an organization substantially similar to it—perhaps, as OverDrive contends, W3C does not fit that bill—but rather that it need only transfer its assets to an organization engaged in activities substantially similar to IDPF's.[4] W3C unquestionably does that.

---

[3] Circling back to Part II.A, *supra*, it is only because § 29-401.22(c) is non-jurisdictional that we may accept this point as conceded, rather than needing to resolve it sua sponte. *See Kidwell*, 670 A.2d at 353 (non-jurisdictional restrictions are subject to waiver).

[4] OverDrive, both in its trial court pleadings and its briefs to this court, materially misquotes the articles on this point. The articles require that IDPF's assets be transferred, upon dissolution, to organizations "which *engage in activities*

22

**D.**

Finally, OverDrive argues that besides the authority granted by § 29-401.22(c), the trial court also had the inherent equitable authority to remedy the various alleged improprieties associated with the merger. *See* D.C. Code § 11-921 (granting the Superior Court "jurisdiction of any civil action . . . at law or in equity").[5] While we doubt that the trial court had such authority outside of the suits permitted by the District's Nonprofit Corporation Act, D.C. Code §§ 29-401.01 to 414.04, we need not conclusively resolve that point. Even assuming that the trial court had some residual authority to hear challenges to nonprofit corporate actions beyond what the Act provides, OverDrive has not sufficiently articulated a basis for such a claim.

---

substantially similar" to IDPF's, whereas OverDrive repeatedly quotes the provision as requiring the assets be transferred to "organizations which *are* substantially similar" to IDPF.

[5] Among the various improprieties OverDrive alleges are that: (1) IDPF made material misrepresentations to its membership to secure the merger's approval; (2) IDPF's failure to dissolve was a material deviation from the approved merger that never received membership approval; (3) McCoy, as IDPF's executive director, had a conflict of interest because he secured a job for himself at W3C upon the merger; (4) the voting period was unduly rushed; and (5) IDPF suppressed alternative options to the merger and censored discussion before the membership vote, in part by holding the only open meeting to discuss the merger in Portugal rather than in the District.

The District's Nonprofit Corporation Act carefully circumscribes the types of challenges to nonprofit corporate actions that can be raised in court, and it further details who can raise those challenges and under what circumstances. In addition to § 29-401.22, discussed at length above, the Act authorizes court actions that include: (1) derivative suits, subject to a variety of requirements, § 29-411.02(a); (2) challenges to acts as being beyond the corporation's power (so-called ultra vires acts), § 29-403.04(b); (3) actions to compel meetings, § 29-401.21(a); (4) actions to inspect corporate records, § 29-413.04; (5) actions for removal of a director, § 29-406.09; and (6) actions for judicial dissolution of a corporation, § 29-412.21.[6] That exhaustive scheme for challenging nonprofit corporate actions is incompatible with OverDrive's view that the Superior Court retains the unfettered power to adjudicate any and all challenges that come before it in this area.

It is true, as OverDrive notes, that the Nonprofit Corporation Act provides that "principles of law and equity shall supplement" it, D.C. Code § 29-107.02, but that is not to say that equitable *causes of action* survive the Act's passage, as OverDrive would have it. The courts' residual equitable powers might be constrained to fashioning remedies not expressly provided for in the statutory scheme, rather than

---

[6] While OverDrive complains of IDPF's failure to dissolve as planned, it has never invoked § 29-412.21 or otherwise sought to compel IDPF's dissolution.

supplementing the causes of action permitted under the Act. *See Thanos v. District of Columbia*, 109 A.3d 1084, 1093 (D.C. 2014) (our courts "have the broad authority to fashion *equitable relief*" (second emphasis added)); *see also Glasgow v. Camanne Mgmt. Inc.*, 261 A.3d 208, 215-16 (D.C. 2021) ("A suit in equity does not lie where there is a plain adequate and complete remedy at law." (citation omitted)).

And even if there are some causes of action to preclude nonprofit corporate actions beyond what the Act authorizes, OverDrive never specifies what cause of action it might have (either at law or in equity). Instead, to paraphrase, it invokes our plenary equitable authority to dispense justice as we see it, and that is authority we do not have. OverDrive has never identified a specific and freestanding claim that could exist alongside the Act's carefully tailored scheme for challenging nonprofit corporate actions. That is no doubt why the trial court did not expressly address the extent of its equitable authority, despite OverDrive's scattershot and perfunctory invocations of it. We thus reject OverDrive's view that the trial court had freestanding equitable authority to address and remedy any "unfair" practices. To the extent some narrower cause of action survived the Nonprofit Corporation Act's passage, OverDrive has not even attempted to articulate its scope or parameters, and we will not take up that task sua sponte. *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("Issues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).

## III.

The judgment of the Superior Court is affirmed.

*So ordered.*